IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bilal A. Al-Haqq, a/k/a Michael Dion McFadden, | ) | Civil Action No. 2:20-3233-DCC-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Warden Evonne Willingham, in her individual and official capacity; A/W Joseph Canning, Associate Warden (Security) in his individual and official capacity; A/W Elaine Freeman, Associate Warden (Program Services) in her individual and official capacity; Major Jonathan Williams, in his individual and official capacity; Capt. Valerie Thomas, in her individual and official capacity; (DHO) Dedrick Williams, in his individual and official capacity; SGT. Michael Harris, in his individual and official capacity; and (IGC) Jennifer Franklin, in her individual and official capacity, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

Plaintiff Bilal A. Al-Haqq is an inmate in custody of the South Carolina Department of

Corrections ("SCDC") who currently is housed at Lieber Correctional Institution in Ridgeville,

South Carolina. At the time of the underlying events Plaintiff was housed at Trenton Correctional

Institution ("TCI") in Trenton, South Carolina. Defendants Warden Evonne Willingham, A/W

Joseph Canning, A/W Elaine Freeman, Major Jonathan Williams, Capt. Valerie Thomas, (DHO)

Dedrick Williams ("Defendant DHO Williams"), SGT. Michael Harris, and (IGC) Jennifer Franklin

are or were employed by SCDC at TCI. On September 10, 2020, Plaintiff, proceeding *pro se*, filed

a complaint pursuant to 42 U.S.C. § 1983, alleging that he was denied his constitutional rights to due process, equal protection, and access to the courts with respect to disciplinary proceedings held on May 19, 2020, and May 23, 2020. Plaintiff also asserted some claims that could be construed as arising under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 to -220. In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., Plaintiff's complaint was referred to the undersigned Magistrate Judge for pretrial handling.

On February 2, 2022, Plaintiff filed a motion for summary judgment. (Dkt. No. 69.) On February 16, 2022, Defendants filed a response in opposition to Plaintiff's motion as well as a cross-motion for summary judgment. (Dkt. No. 70.) On February 17, 2022, this court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and the possible consequences if he failed to adequately respond to Defendants' motion. (Dkt. No. 71.) Plaintiff filed a response in opposition to Defendants' motion on February 25, 2022. (Dkt. No.75.) The motions have been fully briefed and are ripe for review.

## I. FACTS AND PROCEDURAL HISTORY

In his complaint, Plaintiff states he reported to various SCDC supervisors that Defendant Harris had "written up" several black inmates for the charge of use or possession of drugs, but had given white inmates a lesser discipline of extra duty for the same conduct. Plaintiff contends that Defendant Harris learned of Plaintiff's reports and threatened him with serious repercussions. (Dkt. No. 1, 19.) According to Plaintiff, Defendant Harris said he was going to go to the warden and request that Plaintiff be transferred. Defendant Harris subsequently "wrote up" Plaintiff twice in three days for use or possession of drugs. Plaintiff alleges Defendant Harris filed a false disciplinary report on May 5, 2020 in which he claimed that Plaintiff's eyes were red and his speech was slurred.

Plaintiff alleges that Defendant Harris filed a second false disciplinary report on May 8, 2020 for the same conduct without notifying Plaintiff or having a drug test performed, purportedly in violation of SCDC policy. (Dkt. No. 1, 20.) Plaintiff reported Defendant Harris's conduct to Defendant Thomas and other supervisors, who nevertheless allowed drug charges to be brought against Plaintiff. Plaintiff states that various SCDC correctional officers did not follow SCDC protocol when referring Plaintiff to the disciplinary officer to pursue a charge. (Dkt. No. 1, 20.) Plaintiff also contends that Defendant Harris did not identify the alleged intoxicant for which he reported Plaintiff, as required by SCDC policy. Plaintiff asserts that Defendant Harris's oversight entitled Plaintiff to be charged with the less serious offense of possession of contraband. Plaintiff states there was no evidence to substantiate the charges except Defendant Harris's word, and that Defendant DHO Williams found Plaintiff guilty after agreeing with Defendant Harris that "correctional officers had to stick together." (Dkt. No. 1, 21.) According to Plaintiff, he was not allowed to present documentary evidence at the disciplinary hearing and he never received an SCDC Form 19-69A reflecting the reasons for a finding of guilt. Plaintiff states that he requested permission to ask a question during the hearing on May 19, 2020, but was escorted out and the hearing proceeded in his absence.

Plaintiff claims that Defendant Harris violated SCDC policy that prohibits correctional officers from charging an inmate with the use or possession of a drug more than once every thirty days. (*Id.*) According to Plaintiff, all disciplinary hearings are to be treatment-oriented, but inmates are subjected to arbitrary and capricious decision-making because no drug programs are available at TCI. Plaintiff asserts that Defendant Willingham reviewed his disciplinary actions on appeal, but turned a blind eye to the constitutional deprivations. Plaintiff alleges he was confined to segregation

and lost good time credits, in violation of his constitutional rights. Plaintiff also states that Defendant Franklin failed to properly investigate the allegations. Plaintiff further alleges that Defendant Freeman removed Plaintiff from various programs, denied Plaintiff a job for which he had been trained, and would not allow him to return to his former job because of the charges. (Dkt. No. 1, 22-23.) Plaintiff states that he has received nine drug charges without being drug tested, in violation of his procedural due process rights. According to Plaintiff, Defendant Harris engaged in a campaign of harassment by inflaming TCI officers and staff against Plaintiff, and that he is being retaliated against with false disciplinary charges and threats of being transferred to another facility because he had written letters to SCDC headquarters complaining of Defendant Harris's allegedly unconstitutional actions. (Dkt. No. 1, 23.)

Plaintiff further alleges that about a year ago he was sexually assaulted by a correctional officer. Plaintiff alleges he submitted a sexual assault grievance that was ignored. Plaintiff states that the alleged retaliation began when he began to pursue the mishandled grievance. According to Plaintiff, he has been told he would be released back into the general population if he ceases pursuing his legal complaints.[1] (Dkt. No. 1, 24.)

Plaintiff seeks a declaration that his rights were violated; the issuance of a preliminary and permanent injunction ordering Defendants to perform drug tests when charging inmates with use and possession of drugs; a ruling that all of Plaintiff's drug charges that appear on his record not corroborated by a drug test be expunged; and an order that Plaintiff be returned to his original status and be released from administrative segregation. Plaintiff also demands compensatory damages in

---

[1]Plaintiff is pursuing his allegations of sexual assault in *Al-Haqq v. James,* C/A No. 2:21-cv-01721- DCC-MGB.

the amount of $25,000 and punitive damages in the amount of $75,000 against each Defendant. (Dkt. No. 1, 25.)

On November 3, 2021, this court granted Plaintiff leave to amend his complaint to incorporate the entirety of the nine drug test charges referenced in the complaint: specifically, offenses occurring on April 10, 2020 (two offenses); May 5, 2020; May 8, 2020; July 7, 2020; July 23, 2020; July 24, 2020; July 25, 2020; and August 18, 2020. (Dkt. Nos. 40, 58, 59.) Plaintiff states that charges lodged on July 24, 2020 and August 18, 2020 were dismissed, but were not expunged from his record and were used to deny Plaintiff work release status. (Dkt. No. 40.)

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth*., 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

### B. 42 U.S.C. § 1983

Title 42, United States Code, Section 1983 provides a remedy against any person who, under

color of state law, deprives another of rights protected by the United States Constitution. *See City of Monterey v. del Monte Dunes*, 526 U.S. 687, 707 (1999). Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *McKnight v. Rees*, 88 F.3d 417 (6th Cir. 1996).

C.    **South Carolina Tort Claims Act**

With few exceptions not applicable here, the SCTCA constitutes "the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents" while acting within the scope of official duty. S.C. Code Ann. § 15-78-20(b). A "governmental entity" means the State and its political subdivisions. *See id.* § 15-78-30(d). SCDC is a "political subdivision" within the meaning of the SCTCA. *See* S.C. Code Ann. § 15-78-30(h). An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable and the plaintiff must sue the governmental agency itself. S.C. Code § 15-78-70(a). However, if the plaintiff proves that "the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," then the governmental agency is not liable, and the employee is personally liable. S.C. Code § 15-78-70(b).

## III. DISCUSSION

Plaintiff asserts in his motion for summary judgment that he was denied due process in his disciplinary proceedings because (1) charges of trafficking, use, and/or possession of narcotics,

marijuana, or unauthorized drugs require the drug be identified through drug testing; (2) he was not allowed to present documentary evidence at his disciplinary hearings; (3) he was not allowed to question Officer Anderson at a hearing on May 19, 2020; and (4) the Hearing Officer relied on the correctional officers' reports rather than evidence presented at the May 19, 2020 hearing to convict him. Defendants contend in their response and cross-motion for summary judgment that (1) Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies; (2) Defendants are entitled to qualified immunity; (3) Defendants are not individually liable under the SCTCA; (4) Plaintiff was not subjected to retaliation or cruel or unusual punishment under the Eighth Amendment; (5) Plaintiff's due process rights were not violated; (6) the right to redress grievances is not a constitutional right; and (7) Plaintiff has no constitutional right to work while incarcerated. Defendants further argue that Plaintiff's claims are factually and legally frivolous and should count as a strike pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) of the Prison Litigation Reform Act; that Plaintiff is not entitled to injunctive relief; and that Plaintiff is not entitled to having his disciplinary offenses expunged from his record.

As an initial matter, Plaintiff was transferred from TCI to Lieber Correctional Institution on or about October 7, 2020. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir.1986)). The undersigned recommends a finding that Plaintiff's demand for injunctive relief is moot because he no longer is housed at TCI.

When cross-motions for summary judgment are submitted to a district court, each motion

must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)(citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Instead of analyzing Plaintiff's summary judgment motion and Defendants' cross-motion in chronological order, however, the undersigned first will address Defendants' arguments that summary judgment should be granted in their favor because: (1) Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); (2) the doctrine of qualified immunity shields Defendants from liability for Plaintiff's § 1983 claims; and (3) the SCTCA prohibits Plaintiff from asserting any state law tort claims against Defendants in their individual capacities.

**A.      Exhaustion of Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516 (2002).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross v. Blake*, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative process is so opaque that no ordinary prisoner can discern or

navigate through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." 578 U.S. 632, 643-644 (2016). "The district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" *Zander v. Lappin*, 415 F. App'x 491, 492 (4th Cir. 2011) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

SCDC provides inmates a procedure through which the inmates may file grievances related to their confinement. *See* SCDC Policy No. GA-01.12, "Inmate Grievance System." Paragraph 13 sets out the steps in the grievance process. First, with some exceptions, inmates must submit a Request to Staff Member Form in an effort to informally resolve the grievance to the appropriate supervisor/staff within eight working days of the incident. Next, the inmate must complete Form 10-5, Step 1, which requires the inmate to recite whether an attempt was made to resolve the problem informally, set out a brief statement of the circumstances of the grievance, explain why the inmate believes he is entitled to relief, and provide a brief statement of the relief sought. An investigation is initiated by the Grievance Coordinator, who determines whether the complaint is non-grievable and will not be processed, or determines that the complaint is grievable and then provides recommendations to the Warden concerning disposition of the matter. If the Step 1 form is forwarded to the Warden, the Warden responds to the inmate with a decision and explanation of how the decision was reached. As a final step in the administrative process, the inmate may appeal the Warden's decision to the Deputy Director by completing SCDC Form 10-5a, Step 2. A Responsible Official within the Inmate Grievance Branch will return a decision that is deemed to be SCDC's final response for purposes of exhaustion. An inmate may appeal the Responsible Official's decision to an Administrative Law Court, but such action is not necessary for the purpose of exhausting

administrative remedies.

Defendants state that Plaintiff did not properly appeal each charge complained of. In response, Plaintiff states that he did use the grievance system "although its bias and ineffective." (Dkt. No. 75, 3) (errors in original.)

Plaintiff has provided the court with the following summary of the nine offenses he challenges. The undersigned has examined the exhibits attached to Plaintiff's July 30, 2021 reply to Defendants' answer (Dkt. No. 29), as well as Plaintiff's supplemental materials filed September 2, 2021 (Dkt. No. 34).

| Charge | Offense Date | Conviction Date | Sanctions |
|---|---|---|---|
| (903) | 4/10/20 | 4/23/20 | (30 days DD time)[2] |
| (810) | 4/10/20 | 4/23/20 | (90 days canteen) |

(Dkt. No. 29-3, 5-7, 49-51.) [Step 1 Form provided; returned as untimely]

| (903) | 5/5/20 | (never given 19-69a) [May 19, 2020] | (30 days DD time) |

(Dkt. No. 29-3, 16, 55; Dkt. No. 34-1.)

| (903) | 5/8/20 | 5/23/20 | (180 days good time) |

(Dkt. No. 29-3, 17.) [No Step 1 or Step 2 Forms provided.]

| (903) | 7/7/20 | 7/23/20 | (90 phone) (90 visit) (90 canteen) |

(Dkt. No. 29-3, 11-12.) [no Step 1 or Step 2 Forms provided]

| (903) | 7/23/20 | 8/4/20 | (100 days good time) |

(Dkt. No. 29-3, 9-10.) [no Step 1 or Step 2 Forms provided]

| (903) | 7/24/20 | 8/13/20 | (200 days good time) |

(Dkt. No. 29-3, 13-14, 20-21.)     (dismissed per SCDC headquarters)

| (836) | 7/25/20 | 8/4/20 | (9 days DD time) |

---

[2]"DD" means disciplinary detention.

(Dkt. No. 29-3, 15, 44-46.) [Step 1 and Step 2 Forms provided; however, these relate to separate 903 charge.]

(903)        8/18/20            (dismissed at Lieber (DHO) no evidence) (Dkt. No. 29-3, 70-71)

(Dkt. No. 40, 4.)

Pursuant to SCDC Policy No. OP-22.14, "Inmate Disciplinary System," "810" means striking an inmate with or without a weapon (Level 2 Disciplinary Offense), "836" means disrespect (Level 3 Disciplinary Offense), and "903" references trafficking, use, and/or possession of narcotics, marijuana, or unauthorized drugs, including prescription drugs, inhalants, intoxicants, and synthetics; being under the influence of such intoxicants; or failing a drug test (Level 1 Disciplinary Offense). All Level 1 and Level 2 disciplinary offense are documented on SCDC Form 19-29A within 24 hours of the incident. (SCDC Policy No. OP-22.14 ¶ 2.2) If a disciplinary offense is a Level 3, the supervisor on duty may attempt to resolve the matter and impose "corrective action," such as counseling, verbal reprimand, extra duty or chores, restriction of privileges, or confinement to one's cell. (*Id.* ¶ 2.1) A Level 1 or Level 2 offense is considered to be a "major disciplinary" offense. (*Id.* ¶ 28). Level 1 and Level 2 disciplinary offenses will be heard by a Hearing Officer only. (*Id.* ¶ 4.1.1.)

An inmate must be served with notice of disciplinary charges at least 48 hours prior to his hearing. (*Id.* ¶ 7.1.) The hearing is held within 21 calendar days of the date the inmate is formally charged and the charge is entered into the Offender Management System. SCDC Form 19-69A is used to document the charges and the result of the hearing. (SCDC Policy No. OP-22.14 ¶ 7.2.) Each SCDC institution assigns an employee to act as a Counsel Substitute. The Counsel Substitute assists inmates by interviewing witnesses and presenting documentary evidence and relevant

information at the hearing.  (*Id.* ¶ 8.)

The Hearing Officer is responsible for adhering to established guidelines; overseeing and coordinating due process hearings for inmates; ensuring appropriate transactions are executed in the inmate's automated record within two days of the completion of the SCDC Form 19-69A; and informing the inmate of the charges, that the inmate will lose his or her normal rate of good time credits for the month, and specifying other sanctions that may be imposed.  (SCDC Policy No. OP-22.14 ¶ 9.4.) The Hearing Officer completes the SCDC Form 19-69A, which becomes a permanent part of the inmate's institutional and central records.  (SCDC Policy No. OP-22.14 ¶ 9.7.)  An inmate is present at the disciplinary hearings unless he or she has waived the right to be present or if the Hearing Officer determines that his/her behavior prior to or during the hearing justifies exclusion.  (*Id.* ¶ 13.1.)  The Hearing Officer must provide written reasons in the record for the accused inmate's absence during any portion of the hearing.  The inmate's Counsel Substitute, if present, will be permitted to remain and act on the inmate's behalf.  (*Id.* ¶ 13.3.)  The Counsel Substitute, or inmate, if no Counsel Substitute is appointed, may question all witnesses who appear at the hearing.  The Hearing Officer will ask the inmate for questions and then conduct the questioning of the witness.  (*Id.* ¶ 14.5.)  The Hearing Officer will decide the inmate's guilt or innocence based on a preponderance of the credible evidence.  (*Id.* ¶ 16.1.)  Inmates who may have a disciplinary violation dismissed, grievance appeal upheld, and/or a disciplinary conviction overturned via appeal to the Administrative Law Court are not entitled to return to a job assignment, if removed, without approval of the Warden or affected Division Director.  This requirement includes, but is not limited to, prison industry, work release, and contract labor crews.  (*Id.* ¶ 17.8.) SCDC Form 19-69A provides a written record of the hearing. (SCDC Policy No. OP-22.14 ¶ 18.1.)

A copy of SCDC Form 19-69A is provided to the inmate. (SCDC Policy No. OP-22.14 ¶ 18.2.) Inmates may appeal the decision of the Hearing Officer through the procedures set out in SCDC Policy No. GA-01.12.

The undersigned discerns no support for a determination that SCDC's disciplinary and grievance procedures make exhaustion of administrative remedies "unavailable" under *Ross*. The next question is whether Plaintiff completed the grievance procedure with respect to the nine disciplinary hearings he has identified as lacking in due process.

Plaintiff exhausted his administrative remedies only for his conviction on May 19, 2020. The record shows that Plaintiff appealed the Hearing Officer's Decision to the Warden (Dkt. No. 34-1, 1-2), then to the Responsible Official (Dkt. No. 34-1, 3), which is deemed to be SCDC's final decision. Plaintiff also appealed the disciplinary action to the Administrative Law Court (Dkt. 34-1, 5-8.) All entities denied Plaintiff's appeal. There exists no evidence in the record that Plaintiff exhausted his administrative remedies as to his convictions on April 23, 2020, May 23, 2020, July 23, 2020, August 4, 2020, or August 13, 2020.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a an action arising under § 1983, the court must dismiss the unexhausted claims and proceed with the exhausted ones. *Jones v. Bock*, 549 U.S. 199, 201 (2007)("If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."). The undersigned recommends that Defendants' motion for summary judgment for failure to exhaust be granted as to all of Plaintiff's disciplinary hearings previously listed, with the exception of Plaintiff's allegations regarding his May 5, 2020 offense and subsequent May 19, 2020 disciplinary hearing.

**B.**     <u>Qualified Immunity</u>

"When, as here, a law enforcement officer is sued in his individual capacity, he is 'entitled to invoke qualified immunity, which is . . . immunity from suit itself.'" *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "'[Q]ualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)). In determining whether an officer is entitled to qualified immunity, the court must look to: (1) whether a constitutional violation occurred; and (2) whether the right violated was clearly established, though the court need not decide the issues in that precise order. *Id.* "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna ex rel Leija*, 577 U.S. 7, 11 (2015). There need not be a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The due process clause applies when government action deprives an individual of a legitimate liberty or property interest. *Sears v. Hibbs*, Civil Action No. 2:21cv158, 2022 WL 1540208, *6 (E.D. Va. May 16, 2022) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Id.* (citing *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997)). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005)).

1.     <u>Liberty Interest</u>. Defendants assert that they are entitled to qualified immunity in their individual capacities because Plaintiff has not demonstrated a deprivation of life, liberty, or property. The Supreme Court has recognized that states may under certain circumstances create liberty

interests that are protected by the due process clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted). The punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals. *Id.* at 485. Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. *Id.* at 485. When disciplinary confinement does not present the type of atypical, significant deprivation in which a state might create a liberty interest, the Constitution is not offended. *Id.* at 486.

SCDC Policy No. OP-22.14, "Inmate Disciplinary System," provides that, for a Level 1 charge and conviction, the Hearing Officer may impose sanctions that include Disciplinary Detention of 0-60 days (*Id.* ¶ 17.1); unlimited loss of accrued good time credits (*Id.* ¶ 17.1); and loss of privileges, such as access to canteen, television, visitation, telephone, personal property, and employment in prison industries, during the time of Disciplinary Detention and for an additional 90 to 180 days after Disciplinary Detention (*Id.* ¶ 17.5). On May 19, 2020, the Hearing Officer sanctioned Plaintiff to the loss of canteen privileges for 120 days, Disciplinary Detention for 30 days, and suspension of visitation for 120 days. (Dkt. No. 70-1, 5-7.) The sanctions do not present "the type of atypical, significant deprivations" that can create a liberty interest. *See United States. v. Alkire*, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) (holding that there is no constitutional right to the use of a telephone in prison); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (finding that there is no right to visitation guaranteed by the Due Process Clause);

*Goodwin v. Schwartz*, C/A No. 8: 10-1760-CMC-BHH, 2010 WL 34890972, at * 2 (D.S.C. Aug. 11, 2010) ("Canteen access is not a protected liberty interest."), *adopted*, 2010 WL 3489097 (D.S.C. Sept. 1, 2010); *accord Skipper v. S.C. Dep't of Corr.*, 633 S.E.2d 910 (S.C. Ct. App. 2006) (holding that loss of privileges, as opposed to rights, does not implicate liberty interests).

All SCDC inmates who plead guilty or are found guilty before a Hearing Officer automatically fail to earn their normal rates of good time credits for the date/month of the disciplinary offense. (SCDC Policy No. OP-22.14 ¶ 9.4) South Carolina has recognized a state-created liberty interest in the loss of accrued good-time credits. S.C. Code § 24-13-210; *Furtick v. S.C. Dep't of Corr.*, 649 S.E.2d 35 (S.C. 2007). This state-created liberty interest does not extend to the loss of the opportunity to earn good-time credits, however, which was the discipline to which Plaintiff was subjected. *See Howard v. S.C. Dep't of Corr.*, 733 S.E.2d 211, 217 (S.C. 2012). The undersigned recommends a finding that Plaintiff has failed to demonstrate a liberty interest that implicates the due process clause.

2.     Procedural Due Process.  In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that procedural due process in a disciplinary hearing requires (1) advance written notice of the claimed violation, *id.* at 564; (2) a brief period of time not less than 24 hours to allow the inmate a chance to marshal the facts and clarify what the charges are so that the inmate may prepare a defense, *id.*; (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken, *id.* at 565; (4) the right of the inmate to call witnesses and present documentary evidence in his defense, *id*. at 566; (5) where an illiterate inmate is involved, or when the complexity of the issue makes it unlikely the inmate will be able to collect and present

the evidence necessary for an adequate comprehension of the case, substitute aid in the form of help from the staff or a sufficiently competent inmate designated by the staff, *id.* at 570; and (6) an impartial decisionmaker who will not engage in "such a hazard of arbitrary decisionmaking that it should be held violative of due process of law," *id.* at 571. *See also Al-Shabazz v. State*, 527 S.E.2d 742, 752 (S.C. 2000) (holding that SCDC's disciplinary and grievance procedures are consistent with the standards delineated in *Wolff*).

The undersigned has reviewed an audio recording of Plaintiff's May 19, 2020 hearing. The Hearing Officer (Defendant DHO Williams) and Plaintiff each acknowledged his presence at the hearing. Plaintiff verified that he would represent himself.[3] The Hearing Officer read into the record the narrative Defendant Harris provided on the May 5, 2020 Incident Report. The narrative described the alleged facts that led Defendant Harris to believe Plaintiff was under the influence. The Hearing Officer indicated that Plaintiff was given notice of the hearing on May 13, 2020. Plaintiff was made aware of the penalties for a section 903 charge. Plaintiff pleaded not guilty and was provided the opportunity to present his version of the events. Defendant Harris also testified as to the events of May 5, 2020 and indicated that Plaintiff's alleged conduct also was observed by Officers Morris and Anderson. Plaintiff asked questions of Defendant Harris through the Hearing Officer. The hearing was suspended to obtain the testimony of Officer Anderson. When the hearing was resumed, the Hearing Officer indicated that Plaintiff had been removed from the hearing because he refused an order not to talk and because of his behavior. Officer Anderson submitted a written

---

[3]The Disciplinary Report indicates that Plaintiff declined a Counsel Substitute. (Dkt. No. 29-3, 16.) In the recording, the Hearing Officer stated that Plaintiff did not qualify for a Counsel Substitute. Either way, Plaintiff was able to state his side of the story and pose questions of Defendant Harris.

statement based on questions propounded by Plaintiff through the Hearing Officer. Officer Anderson's written statement corroborated Defendant Harris's narrative. Defendant Williams found Plaintiff to be guilty *in abstentia* based upon the incident report and narrative. Plaintiff was sentenced to the loss of canteen privileges for 120 days, disciplinary detention for 30 days, and suspension of visitation for 120 days. (Dkt. No. 70-1, 5-7; Exh. 1-16c identified as Dkt. No. 70-4, 2, download accessed June 22, 2022.)

The undersigned recommends a finding that, even if Plaintiff had demonstrated that Defendants' actions impinged on Plaintiff's life, liberty, or property as contemplated by *Sandin*, Plaintiff's May 19, 2020 disciplinary hearing comported with the strictures of *Wolff* and SCDC Policy No. OP-22.14.

There being no due process deprivation, the undersigned recommends that Defendants' motion for summary judgment be granted on the grounds of qualified immunity as to the May 19, 2020 disciplinary conviction.

## C.      South Carolina Tort Claims Act

Defendants argue that, to the extent the court construes any of Plaintiff's claims as arising under state law, Plaintiff offers only bare and conclusory allegations and fails to specifically reference any action on the part of any Defendant that would tend to show his or her conduct was not within the scope of his or her official duties or that the conduct constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. (Dkt. No. 70, 21) (quoting S.C. Code Ann. § 15-78-70(b).) Defendants further state that, even if Plaintiff identified any acts or omissions giving rise to liability under the SCTCA, Defendants were acting within their discretion and judgment, and none caused any actual injury to Plaintiff. The undersigned recommends that

summary judgment be granted on the grounds of SCTCA immunity for any state law claims asserted by Plaintiff against Defendants in their individual capacities. Plaintiff's remedy under the SCTCA requires him to bring an action against SCDC. Plaintiff did not name SCDC as a defendant in this action.

### D.    **Plaintiff's Motion for Summary Judgment**

1.    <u>Failure of SCDC to conduct drug tests</u>. Plaintiff first argues that his section 903 charge required corroboration of three separate drug tests that should have been recorded on SCDC Form 8-17 and appended to SCDC Form 19-69A. Plaintiff raised this issue in his Step 2 Grievance. Section 903 of SCDC Policy No. OP-22.14 provides:

It is a violation of this section for an inmate to:

Actually or constructively traffic, use, or possess drugs or intoxicants of any type or description (except those prescribed by an authorized physician and within authorized amounts and expiration dates) such as but not limited to: barbiturates, narcotics, medicines, marijuana, poisons, inhalants and synthetic cannabinoids; as well as all drug paraphernalia, such as but not limited to: needles, syringes, pipes, rolling papers and straws. Officers may rely on their training and experience to identify any intoxicating substance or paraphernalia where no available scientific tests have been created and/or confirmed credible. Substances which cannot be identified by the officer through their training and experience will be considered contraband and subject to an 817 Possession of Contraband charge unless the inmate can prove by a preponderance of the evidence at the disciplinary hearing that the substance was either: (1) issued to the inmate officially; (2) purchased in the institutional canteen; (3) authorized by the Warden and/or Agency policy; or (4) issued to the inmate by SCDC. This rule violation encompasses the "hoarding" of authorized prescribed medication by any inmate(s), or inmates who having accepted their medication, then failed to ingest the medication at the time they are issued it at the pill call. Or;

[Be] Under, or feign (pretend) to be under, the influence of any intoxicant, other than one prescribed by an authorized physician, which creates an altered state of physical or mental activity. The observation and documentation by institutional staff of inmates exhibiting behavior such as paranoia, panic attacks, giddiness, agitation, hallucinations, psychosis, unexplained hypertension (high blood pressure),

19

tachycardia (increased heart rate), vomiting, seizures, foaming at the mouth, blurred vision, total memory loss, inability to feel pain, suicidal thoughts, uncontrollable aggression or any other symptoms which through the staff members training and experience would lead them to reasonably believe the inmate is under the influence of a drug or intoxicant would be sufficient to justify this charge. A voluntary admission by an inmate that they are intoxicated, whether spontaneously uttered or as a result of questioning by institutional staff, can be considered in making this charge but is not, in itself, enough to justify the charge.

Test positive for any unauthorized drug or intoxicant, refuse to submit to a drug test, or fail to produce a specimen within three (3) hours, as specified in SCDC Policy GA-03.03, "Inmate Drug Testing/Screening Program."

Defendants assert that each paragraph comprises a different means by which an inmate can be charged for a section 903 offense: first, by trafficking, using, or possessing drugs or intoxicants; second, by being (or pretending to be) under the influence of any intoxicant; and third, by testing positive for any unauthorized drug or intoxicant, refusing to submit to a drug test, or failing to produce a specimen for testing as specified in SCDC Policy No. GA-03.03.[4] According to Defendants, Plaintiff's May 5, 2020 offense falls within the second paragraph, which can be charged solely on the basis of an experienced staff member's observations; no drug testing is required to corroborate the staff member's observations.

The undersigned concludes that the plain and ordinary meaning of section 903 supports Defendants' interpretation. The first paragraph provides that a prisoner can be charged for a section 903 offense by possessing or trafficking drugs or intoxicants absent being under the influence or appearing to be under the influence. The second paragraph provides that a prisoner can be charged under section 903 with being under the influence, even if the prisoner has no drugs or intoxicants in his possession. The third paragraph refers to charges arising under SCDC Policy No. GA-03.03,

---

[4]On June 22, 2022, SCDC Policy No. GA-03.03 was superseded by SCDC Policy No. OP-2259. The undersigned references the Policy in effect at the time of Petitioner's May 5, 2020 offense.

a separate policy that establishes "a controlled substance testing, sanctioning, and intervention program designed to identify, prevent, and/or treat inmate drug abuse. All inmates under the jurisdiction of SCDC will be subject to drug testing at any time, regardless of their gender, national origin, race, or religion. Drug testing will not be conducted for the purposes of harassing any inmate(s)." (SCDC Policy No. GA-03.03 "POLICY STATEMENT.") While SCDC Policy No. GA-03.03 contemplates two or three tests be administered to verify the results, the requirement for multiple tests is confined to the drug testing/screening program. (*See id.* ¶ 5.5) ("To ensure quality results and consistency with procedures, if an inmate tests positive on both the initial and the second field test stick for the first time since s/he has been incarcerated, the SCDC will send that urine sample to an outside laboratory for testing.") SCDC Policy No. GA-03.03 instructs correctional officers to complete SCDC Form 19-29As as appropriate and to submit the forms to the Inmate Drug Testing Coordinator, Inspector General, monthly.

Plaintiff was not charged under section 903 because he failed a drug test administered as part of SCDC Policy No. GA-03.03. Therefore, the procedures outlined in SCDC Policy No. GA-03.03 do not apply. Rather, Plaintiff was charged under section 903 pursuant to the second paragraph based upon the observations of Defendant Harris and Officer Anderson. The correctional officers' impressions that Defendant was under the influence because Plaintiff "seem[ed] to be out of it" (Dkt. No. 70-1, 6) and was "staggering while trying to walk, bloodshot glassy eyes, and very slurred speech" (Dkt. No. 70-1, 7) were sufficient to support the section 903 charged based on the officers' training and experience. Plaintiff's argument is without merit.

2. <u>Loss of good time credits</u>. Plaintiff next contends that "[b]ecause there was a loss of goodtime to the plaintiff there must be some evidence to support the conviction and satisfy the due

process requirements." (Dkt. No. 69, 7.) Plaintiff did not exhaust this issue. As explained *supra*, however, Plaintiff lost only the opportunity to accrue good-time credits during the time he was disciplined on May 19, 2020. The lost opportunity for earning good-time credits does not deprive Plaintiff of due process. Plaintiff's argument is without merit.

       3.    <u>Lack of due process at disciplinary hearing</u>. Plaintiff states that he was not allowed to present documentary evidence at his disciplinary hearing, and was not allowed to question Officer Anderson. Plaintiff exhausted these allegations. As discussed *supra*, Plaintiff's May 19, 2020 disciplinary hearing comported with the strictures of *Wolff* and SCDC Policy No. OP-22.14. Plaintiff was unable to question Officer Anderson because his failure to follow orders during the recess before Officer Anderson joined the disciplinary hearing resulted in Plaintiff's removal from the hearing. *See* SCDC Policy No. OP-22.14 ¶ 13.3. Placement of inmates into administrative units or similar units is a valid means of minimizing a threat to security of the institution, threat to the safety of other residents, or jail staff. *Merriweather v. Reynolds*, 586 F. Supp. 548, 557 (D.S.C. 2008) (citing cases)). Plaintiff's argument is without merit.

       4.    <u>Failure to identify intoxicant</u>. Plaintiff next argues that his section 903 conviction was improper because the substance of which he allegedly was under the influence was not identified.[5] Plaintiff exhausted this issue. Under SCDC Policy No. OP-22.14, ¶ 14.1,

> If one or more of the charges involved the possession of contraband, the item(s) of contraband, a sample of the contraband, or a picture of the item should be produced at the hearing. Also, if the contraband involves tobacco or a controlled substance, i.e., illegal drugs such as marijuana or alcohol, the Hearing Officer must have available a copy of SCDC Form 19-79, "Controlled Substance Testing and Disposition Form,"

---

[5]As examples of his argument, Plaintiff references disciplinary hearings that took place on July 29, 2020 (Dkt. No. 70-1, 8-9) and August 4, 2020 (Dkt. No. 70-1, 10-11). The argument is relevant to Plaintiff's May 19, 2020 hearing as well.

that establishes the exact type of illegal drug found in the possession of the inmate.

Plaintiff was not charged with possession of contraband, but with being under the influence of intoxicants based upon his behavior. An inmate falling under the second paragraph of section 903 very well could have consumed the intoxicant such that it is impossible for a correctional officer to provide "the item(s) of contraband, a sample of the contraband, or a picture of the item" at the disciplinary hearing. If anything, ¶ 14.1 supports Defendants' construction of section 903 as establishing three different types of offenses subject to discipline.

Paragraph 14.1 is not applicable to Plaintiff's May 19, 2020 disciplinary hearing. Plaintiff's argument is without merit.

5. <u>Insufficient written statement of guilt</u>. Plaintiff asserts the Hearing Officer's written statement that the finding of guilt was "based on the officer's report" was wholly insufficient and violative of his right to due process. (*See* Dkt. No. 70-1, 5.) Plaintiff generally raised this issue on the Step 1 and Step 2 Forms relevant to the May 19, 2020 hearing. Plaintiff cites to *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). In *Goldberg*, the plaintiffs were recipients of financial aid under the Aid to Families with Dependent Children program or under New York State's general Home Relief Program. *Id.* at 256. The plaintiffs alleged that New York State and New York City officials administering the programs terminated aid without prior notice and a hearing, thereby denying the plaintiffs due process of law. *Id.* After the action was brought, state and city authorities adopted regulations that gave seven days' notice to the recipient of the reasons for a proposed discontinuance or suspension of benefits, and provided that the recipient could submit a written statement to demonstrate why his benefits should not be discontinued or suspended. The Supreme Court held that the due process clause required an evidentiary hearing where the recipient could have an opportunity

to defend by confronting adverse witnesses and by presenting his own arguments and evidence orally. *Id.* at 268. The Court further held that

> the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law.

*Id.* at 271 (citations omitted).

The Hearing Officer stated at the May 19, 2020 disciplinary hearing and indicated on SCDC Form 19-69A that he found Plaintiff guilty based on the officer's report and the narrative. Although the Hearing Officer's reasons could have been more detailed, the Hearing Officer read into the record Defendant Harris's report, heard opposing versions of the facts from Defendant Harris and Plaintiff, and received into evidence Officer Anderson's written statement. The undersigned concludes that the Hearing Officer's oral and written statements conformed to the requisites of *Goldberg*. Plaintiff's contention is without merit.

For all these reasons, the undersigned recommends that Plaintiff's motion for summary judgment be denied.

### E. __Defendants' Motion for Summary Judgment__

1. <u>Violation of Eighth Amendment</u>. In addition to the arguments recited *supra*, Defendants assert that Plaintiff was not subjected to retaliation and/or cruel and unusual punishment in violation of his rights under the Eighth Amendment. The undersigned does not read Plaintiff's Step 1 and Step 2 forms regarding the May 19, 2020 disciplinary hearing as asserting a claim under the Eighth Amendment. (Dkt. No. 34-1, 1-3.) The undersigned nevertheless will review Defendants' argument.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Courts considering a prisoner's claim must ask both if "'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillan*, 503 U.S. 1, 8 (1992) (quoting *Wilson v Seiter*, 501 U.S. 294, 298 (1991)). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9 (internal citations and quotation marks omitted). In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Stickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

Defendants argue Plaintiff established no deprivation of a basic human need arising from the conduct of Defendants, or that Defendants acted with a sufficiently culpable state of mind. The undersigned agrees. The discipline imposed by the Hearing Officer was determined after Plaintiff received a hearing that accorded with due process. The discipline imposed fell within approved parameters promulgated in SCDC Policy No. OP-22.14. There is no allegation that Plaintiff was denied food, medical care, or any other basic human need.

2. <u>Violation of Due Process Clause</u>. Defendants next assert that Plaintiff's due process rights were not violated. To the extent Plaintiff's due process arguments were addressed *supra*, this Court reiterates its determination that Plaintiff has identified no protected liberty interest and that

Defendants' actions did not impose "atypical and significant hardship" on Plaintiff "in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 481-82.

Defendants mention, but do not analyze, Plaintiff's contention that his due process rights were violated because he was charged with two section 903 violations within a 30-day period. Plaintiff raised this claim in his Step 1 and Step 2 Forms regarding the May 19, 2020 hearing. SCDC Policy No. GA-03.03, "Inmate Drug Testing/Screening Program," ¶ 9, provides:

> 9. DISCIPLINARY SANCTIONS: Inmates convicted of the use or possession of narcotics, marijuana, or unauthorized drugs, including prescription drugs will be subject to the sanctions listed in SCDC Policy/Procedure OP-22.14, "Inmate Disciplinary System." (NOTE: Marijuana can be present in urine for up to 30 days after use. Because of this, inmates who test positive for marijuana and are convicted under the Inmate Disciplinary System, will not be charged with a second disciplinary if they are tested within 30 days of the first test. However, inmates who have tested positive for marijuana will enter the targeted group for more testing. All drug test results will be submitted and documented in the Offender Management System as stated in Specific Procedure 7.8, above.)

Plaintiff was not subjected to drug testing under SCDC Policy No. GA-03.03. As set forth *supra*, Plaintiff's section 903 charge was based on the second paragraph of section 903 and reportable based on the observations of Defendant Harris and Officers Morris and Anderson. There is no prohibition on reporting allegations of section 903 misconduct except for those inmates being tested or screened under SCDC Policy No. GA-03.03, and then solely for inmates who test positive for marijuana.

The undersigned recommends that Defendants' motion for summary judgment be granted as to this issue.

3.  <u>Violation of Right to Redress Grievances</u>. Defendants correctly argue that, to the extent the Court interprets Plaintiff's claims to assert Defendants are liable for violating Plaintiff's

constitutional right to redress grievances, access to administrative remedies is not a constitutionally protected right. Claims arising from the violation of grievance procedures or from a correctional officer's response to a grievance generally do not state a constitutional claim. This is because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

4. <u>Right to Work While Incarcerated</u>. Defendants correctly assert that prison work assignments are matters within the discretion of prison officials, and thus implicate no constitutional concerns. *See Johnson v. Knable*, 862 F.2d 314 (unpublished), 1988 WL 119136, *1 (4th Cir. Oct. 31, 1988). Further, SCDC Policy No. OP-22.14 ¶ 17.8 authorizes the sanction:

> **Disciplinary Violations/Job Assignments:** Inmates who may have a disciplinary violation/conviction dismissed, a grievance appeal upheld, and/or a disciplinary conviction overturned via an appeal to the Administrative [L]aw Court are not entitled to return to a job assignment, if removed, without approval of the Warden or affected Division Director. This requirement will include, but not be limited to prison industry, work release, and contract labor crews. (**NOTE:** For designated facility inmates, refer to Agency Policy/Procedure OP-21.05, "Designated Facility Inmate Transfers.")

Plaintiff's allegation that his constitutional rights were violated when he was denied the opportunity to return to his work assignments is without merit. The undersigned recommends that Defendants' motion for summary judgment be granted as to this issue.

* * *

Defendants seek to have Plaintiff's complaint dismissed and count as a strike pursuant to 28 U.S.C. § 1915(g). When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a)(b)(1). The Prison Litigation Reform Act's

three-strikes rule "generally prevents a prisoner from bringing suit in forma pauperis (IFP) – that is, without first paying the filing fee – if he has had three or more prior suits 'dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim on which relief may be granted.'" *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1723 (2020) (quoting 28 U.S.C. § 1915(g)). The undersigned finds that Plaintiff's claims were not frivolous, malicious, or that he failed to state a claim. The undersigned recommends that Defendants' motion for summary judgment be denied as to this issue.

Defendants next contend that Plaintiff is not entitled to injunctive relief. For the reasons stated *supra*, the undersigned recommends Defendants' motion for summary judgment be granted as to this issue.

Finally, Defendants state that Plaintiff is not entitled to have his section 903 offenses expunged from the record, his status restored, or be released from administrative segregation. This Court agrees that Plaintiff is not entitled to these remedies because he has failed to demonstrate a constitutional deprivation as to his May 19, 2020 disciplinary hearing. The undersigned recommends Defendants' motion for summary judgment be granted as to this issue.

## F.    Plaintiff's Retaliation Claims

Although not fully addressed by the parties, Plaintiff's retaliation allegations give this Court some pause. To reiterate, Plaintiff alleged in his complaint he was subjected to retaliation because he reported to SCDC officials that Defendant Harris had reported several other black inmates with use or possession of drugs, but had given white inmates the lesser discipline of extra duty for the same conduct. Plaintiff contends Defendant Harris learned of the correspondence and stated there would be serious repercussions, including threatening to have Plaintiff transferred out of TCI.

28

Plaintiff also states that Defendant Harris fabricated a reason to "write up" Plaintiff for use or possession of drugs, and that he falsified disciplinary reports. In his response to Defendants' cross-motion for summary judgment, Plaintiff alleges that he was transferred from TCI to Lieber Correctional Institution in retaliation for exercising his First Amendment rights.

"An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Martin v. Duffy*, 977 F.3d 294, 306 (4th Cir. 2020) (citing *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir.1995); *Maben v. Thelen*, 887 F.3d 252, 262–63 (6th Cir. 2018); *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)). Courts view retaliation claims in the prison context with an eye toward avoiding "'excessive judicial involvement in prison administration.'" *Id.* (citing *Pratt v. Rowland*, 65 F.3d 803, 807 (9th Cir. 1995)).

In *Martin*, the Fourth Circuit adopted the "same-decision" test from *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977), an employment retaliation case, and applied it to prisoner litigation. Pursuant to *Mt. Healthy*, a prisoner must establish a *prima facie* case of retaliation. The burden then shifts to the correctional officer to prove, by a preponderance of the evidence, that it would have reached the same decision in the absence of the protected conduct. *See Martin*, 977 F.3d at 299. If the correctional officer fails to carry that burden, the inference is that "but for" causation has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant. *Id.* (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)).

Although inmates do not have a constitutional right to file grievances, they do have a right under the First Amendment to be free from retaliation for filing grievances. *Booker*, 855 F.3d at 544-45. The audio recording of the May 19, 2020 hearing makes plain Defendant Harris's

frustration that Plaintiff allegedly was trying to manipulate the staff against him (Defendant Harris) and that Plaintiff was trying to manipulate him (Defendant Harris), personally. Defendant Harris stated that he did not "appreciate" Plaintiff's conduct and that Plaintiff's conduct was a threat to Defendant Harris's ability to perform his job.

However, based on the record before the Court, Plaintiff cannot establish a *prima facie* case of retaliation. There is simply insufficient evidence beyond Plaintiff's mere allegations to support a retaliation claim. The undersigned therefore recommends that any such claim be dismissed.

## IV.  CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 69) be **DENIED**, and that Defendants' motion for summary judgment (Dkt. No. 70) be **GRANTED IN PART AND DENIED IN PART**. The undersigned **RECOMMENDS** that the District Court decline to deem the complaint a "strike" pursuant to § 1915(e)(2)(B)(i).

**IT IS SO RECOMMENDED**.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 1, 2022
Charleston, South Carolina

## NOTICE OF RIGHT TO FILE OBJECTIONS

## TO REPORT AND RECOMMENDATION

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).